1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KURT E. WILSON, ESQ. (121163)
SCOTT A. MANGUM (260758)
**SWEENEY, MASON, WILSON & BOSOMWORTH**
A Professional Law Corporation
983 University Avenue, Suite 104C
Los Gatos, CA  95032-7637
Telephone:  (408) 356-3000
Facsimile: (408) 354-8839

Attorneys for Plaintiff
ZURB, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURB, INC., a California corporation,<br><br>      Plaintiff,<br><br>v.<br><br>GINGER LABS, INC., a Delaware corporation,<br><br>      Defendant. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT**<br><br>**DEMAND FOR JURY TRIAL** |

     Plaintiff ZURB, INC. alleges:

**THE PARTIES**

     1.     Plaintiff ZURB, INC. (hereinafter referred to as "Plaintiff") is, and at all times herein mentioned was, a California corporation duly authorized to do business and doing business in the State of California, with its headquarters in Campbell, California in the County of Santa Clara.

     2.     Plaintiff is informed and believes and thereon alleges that Defendant GINGER LABS, INC. (hereinafter referred to as "Defendant") is, and at all times herein mentioned was a Delaware corporation duly authorized to do business and doing business in the State of California, with its headquarters in Palo Alto, California in the County of Santa Clara.

///

1

### VENUE

2      3.      This action arises under the Lanham Act of July 5, 1946, 60 Stat. 427, USC, Title

3  15, Sections 1051-1127.  Jurisdiction is vested in this Court by virtue of 15 USC 1121 and 28

4  USC 1338.

5

### THE PURPOSE OF THE LANHAM ACT

6      4.      The primary objectives of trademark law are (i) to protect consumers from being

7  misled as to the source of products, (ii) to prevent impairment of a trademark's value to its owner

8  and (iii) to achieve the first two objectives in a manner consistent with free competition.  *See E*

9  *Systems, Inc. v. Monitek, Inc.,* 720 F.2d 604, 607 (9th Cir. 1983).  The test for an actual

10  infringement under the Lanham Act is whether the infringer's use of a given mark crates a

11  likelihood of confusion as to the source of the goods or services offered in the mind of the

12  average consumer.  *See* 15 USC §1114; *Westinghouse Elec. V. Gen. Circuit Breaker & Elec.,*

13  106 F.3d 894, 899 (9th Cir. 1997).  Likelihood of confusion is established when the competing

14  marks are similar in appearance, sound and meaning; the trade areas overlap; and the class of

15  goods or services involved is similar.  *See e.g. Official Airline Guides, Inc. v. Goss,*  6 F.3d 1385,

16  1393, (9th Cir. 1993).

17  ### THE RELEVANT FACTUAL BACKGROUND AND DEFENDANT'S MERITLESS

18  ### LEGAL POSITIONS

19      5.      Plaintiff owns the registered service mark "NOTABLE" (the "Mark").  The Mark

20  was registered with the United States Patent and Trademark Office on July 22, 2009

21  (Registration Number 77787223).  A true and correct copy of Plaintiff's registration is attached

22  hereto as **Exhibit A**.  The Mark pertains to Plaintiff's software application design tool, which

23  enables users to view design concepts and provide and manage feedback pertaining to internet

24  sites and computer processes.

25      6.      Although any cursory search by Defendant would have easily revealed the

26  existence of the Mark, sometime after March 30, 2010, Defendant began marketing and selling a

27  similar computer software program using the identifying label "NOTABILITY."

28  ///

7.      Plaintiff learned of Defendant's use of "NOTABILITY" in or about July, 2012, and sent to Defendant its cease and desist letter, with enclosures, dated August 7, 2012.  A true and correct copy of the August 7, 2012 letter and enclosures is attached hereto as **Exhibit B**. Defendant responded with its letter of August 16, 2012 (copy attached as **Exhibit C**).  Plaintiff sent to Defendant its letter of July 8, 2013 (copy attached as **Exhibit D**).  At present, Defendant has failed and refused to cease and desist from using the confusingly similar mark "NOTABILITY," despite Plaintiff's request therefor.

8.      Defendant's claim that "[i]n spite of sharing several letters, the look, the sound and the overall impression of 'Notability' and 'Notable' are quite different and would be unlikely to result in confusion …". Exhibit C.  Defendant's claim is false, completely unsupported by facts or legal authority and patently inconsistent with the applicable law.  *In re West Point-Pepperell, Inc.*, 468 F.2d 200, 201, 175 USPQ 558, 558-59 (C.C.P.A. 1972) (The question is not whether people will confuse the marks, but whether the marks will confuse people into believing that the goods they identify come from the same source.); *See Recot, Inc. v. M.C. Becton,* 214 F.3d 1322, 1329-30, 54 USPQ2d 1894, 1899 (Fed. Circ. 2000) (indicating that the test of likelihood of confusion is not whether the marks can be distinguished when subjected to a side-by-side comparison.  The question is whether the marks create the same overall impression); *Visual Info. Inst., Inc. v. Vicon Indus Inc.*, 209 USPQ 179, 189 (TTAB 1980).

9.      Defendant knows that its claim that "NOTABLE" and 'NOTABILITY" are "quite different and would be unlikely to result in confusion" is patently meritless and inconsistent with the applicable law (i.e., frivolous).  The two words are virtually identical, and have a similar sound and meaning.

10.      Defendant through its legal counsel knows that Courts have held the following marks confusingly similar on the ground that the marks convey the same meaning to buyers:

| | |
|---|---|
| BEAUTY-REST (mattresses) | BEAUTY SLEEP (mattresses) |
| BEER NUTS (nuts) | BREW NUTS (nuts) |
| BRUT (men's toiletries) | BRUTUS (men's wearing apparel) |

| | |
|---|---|
| CITY GIRL<br>(women's clothing) | CITY WOMAN<br>(women's blouses) |
| MOBIL<br>(gasoline) | MOBILE MECHANICS<br>(auto repair and towing) |
| SLICKCRAFT<br>(motorboats) | SLEEKCRAFT<br>(motorboats) |

11.     Defendant also claims that the "products, services and markets are very different." Exhibit C.  Again, Defendant's claim is false and unsupported in fact or law (i.e., frivolous).  *See Safety-Kleen Corp. v. Dresser Indus., Inc.,* 518 F.2d 1399, 1404, 186 USPQ 476, 480 (C.C.P.A. 1975) (The goods of the parties need not be identical or directly competitive to find a likelihood of confusion.);  *In re Total Quality Group, Inc.,* 51 USPQ2d 1474, 1476 (TTAB 1999) (Goods need only be related in some manner, or conditions surrounding their marketing are such that they would be encountered by the same purchasers under circumstances that would give rise to the mistaken belief that the goods come from a common source); *See, e.g., On-line Careline Inc. v. Am. Online Inc.* 229 F.3d 1080, 1086-87, 56 USPQ2d 1471 1475-76 (Fed. Cir. 2000); *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 1566-68, 223 USPQ 1289, 1290 (Fed. Cir. 1984); *In re Int'l Tel. & Tel. Corp.,* 197 USPQ 910 (TTAB 1978).

12.     The true facts are that:

a.     <u>Products/Services:</u> The parties' two products are virtually identical. They both allow users to "write" notes on touchpad or computer screen shots.

       i.   Plaintiff's NOTABLE software allows users to graphically interact with their touchpads or computers so as to write comments and annotate directly onto the user's screen and then share those notes, drawings, comments and ideas with others.  It allows users to collaborate and share their feedback with other users.

      ii.   Defendant's NOTABILITY product allows users to graphically interact with their touchpads and computer screens in virtually the same manner. It allows users to write comments and annotate directly

///

1     onto the user's screen and then share those notes, comments and ideas

2     with others.  It allows users to collaborate and share their feedback

3     with other users.

4   The similarities do not end there. Defendant's website parrots Plaintiff's description of its

5   product on its website.

6           iii.   Plaintiff's website notes the user's ability to "*Provide Feedback From*

7                  *Anywhere*," "*log in from your phone, tablet or PC to give feedback*,"

8                  Defendant's website trumpets the same concept. "*WITH YOU EVERY*

9                  *STEP OF THE WAY.  On the road. Create and access notes offline*."

10          iv.    Plaintiff describes its product: "*Notable lets you take any interface*

11                 *screenshot, sketch or wireframe and exchange notes on specific details*

12                 *with your team. You can quickly reply or suggest a better idea.*

13                 *Notable is the easiest way for you and your team to gather feedback on*

14                 *projects*."  Defendant uses similar language: "*Work- Capture an idea.*

15                 *Annotate a blueprint. Share and review team notes.  Track a project*."

16          v.     Plaintiff notes that with its software "*[y]ou can also upload images,*

17                 *PDFs and PowerPoints, or capture directly from Windows, Mac or*

18                 *Photoshop*."    Defendant phrases the feature this way: "*[e]very note*

19                 *taking tool is available for marking up slides, PDF's and docs*."

20          vi.    Plaintiff's site touts: "*[o]rganize.  All of your notes, lists, handouts,*

21                 *and forms are now organized beautifully in one location. Collaborate*

22                 *& Share. Use free cloud services to iterate on a design with your*

23                 *colleagues*."    Defendant phrases the concept as: "*Organize Your*

24                 *Work In One Place - With workspaces and sets, you can place all of*

25                 *your related captures in one place so you can stay organized with your*

26                 *different projects and clients*."

27   ///

28   ///

vii. Both products are design tools. Plaintiff's website states: "*[w]e can't design with one specific device in mind, but you knew that already. We have to design across multiple devices, responsively. With Notable, you can share feedback on multiple views of a responsive webpage within the browser.*"   Defendant shares on their NEWS page: "*Designers are drafting, sketching, and producing beautiful mockups for clients.*"

The NOTABILITY and NOTABLE products are clearly and obviously similar despite some differences.  Defendant's claim that the goods and services associated with the marks are not similar is frivolous.  Defendant's claim is analogous to the following hypothetical: A company opens up a McDonald's restaurant, but claims that there is no infringement because the restaurant offers roast chicken and serves its food buffet style and "all you can eat."  Obviously, any claim by the company that its use of the mark McDonald's is not infringement because of these differences would be frivolous.  They are both restaurants, just as the NOTABILITY and NOTABLE products are both software application design tools allowing users to view design concepts and provide and manage feedback pertaining to internet sites and computer screen shots.

b.  Markets: Plaintiff markets its applications to a wide range of businesses and consumers alike a low price point and in an identical market as Defendant, including through Apple's iTunes Store.  Both products are competitively and comparably priced and designed to appeal to a broad range of users with wide-ranging levels of sophistication, from children to sophisticated business people.

13.   Defendant knows that its claim is inconsistent with the applicable law:

For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists.  *Cf. Stork Restaurant, Inc. v. Sahati*, 166 F.2d at 356 (restaurants with same name in different geographical and price markets).  The more likely the public is to make such an association, the less similarity in the marks is requisite to a finding of likelihood of

///
///

confusion.  See *American Steel Foundries v. Robertson*, 269 U.S. 372, 382, 46 S. Ct. 160, 70 L. Ed. 317 (1926); *Russell Chemical Co. v. Wyandotte Chemicals Corp.*, 337 F.2d 660, 52 C.C.P.A. 807 (1964). Thus, less similarity between the marks will suffice when the goods are complementary, *Communications Satellite Corp. v. Comcet, Inc.,* 429 F.2d at 1253 ("Complementary products, or services, are particularly vulnerable to confusion."); *American Drill Bushing Co. v. Rockwell Manufacturing Co.,* 342 F.2d 1019, 1022, 52 C.C.P.A. 1173 (1965) (drill bits and drill bushings), the products are sold to the same class of purchasers, Restatement of Torts §731, Comment d (1938), or the goods are similar in use and function.  See *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (CA 2 1971).

*AMF, Inc. v. Sleekcraft Boats* (9th Cir. 1979) 599 F. 2d 341, 350.  The bottom line:  Defendant's continuing infringement is intentional and Defendant is well aware that a reasonable consumer in the market place faced with two products, one labeled "NOTABLE" and one labeled "NOTABILITY," will very likely be confused, and their confusion will be exacerbated by the similarities between the products.

14.    Defendant also claims that there is no infringement because there "has been no actual confusion."  This claim is also frivolous, because it is patently inconsistent with the well-established law that the holder of a registered trademark need not establish any actual confusion to enforce its rights.  "One does not have to await the consummation of threatened injury to obtain preventative relief."  *Standard Oil Co. v. Standard Oil Co.*, 56 F.2d 973 (10th Cir. 1932). "[I]t is black letter law that confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source."  *Lois Sportswear, USA, Inc., v. Levi Strauss & Co.,* 799 F.2d 867 (2d Cir. 1986). "Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant."  *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.2d 275 (6th Cir. 1997).

///

///

///

///

15.     It is well-established that the holder of an infringed trademark is entitled to injunctive relief.

> It is difficult to imagine an unfair competition case where damages are adequate to remedy the problem of defendant's continued acts. (citation) if an injunction were denied, the court would be telling plaintiff to sit by and watch defendant continue to violate the law and infringe upon plaintiff's rights until such time as plaintiff decided to sue again for money damages as compensation for the past injury incurred.  Thus, an injunction is the standard remedy in unfair competition cases.  (citation)

*McCarthy on Trademarks and Unfair Competition*, West Group, Volume 3, Chapter 30, 30:2.

> In trademark infringement, it is not necessary for plaintiff to prove actual damage or injury to obtain injunctive relief.  It is difficult for the owner of a trademark to prove the amount of his damage or how much it is caused by the infringement.  All that must be proven to establish liability and the necessity for an injunction to stop defendant is the *likelihood* of confusion and hence of injury. (citation)

*Id.* § 30:10.

In this case, Defendant has refused to even consider making any change of any nature to the name "NOTABILITY", or take any other action to eliminate the likelihood of confusion between its market and "NOTABLE".  In light of the Defendant's patently meritless claims and obvious, intentional infringement, a preliminary and permanent injunction should issue precluding Defendant from using the "NOTABILITY" name for its product.

## FIRST CAUSE OF ACTION

### (*For Trademark Infringement Against Defendant*)

16.     Plaintiff hereby incorporates paragraphs 1 through 12 of this Complaint as if set forth fully herein.

17.     At all material times herein, Plaintiff has been and is engaged in the development, manufacture, and distribution of computer software under the trademark "NOTABLE." Plaintiff first adopted and used the trademark "NOTABLE" to identify its computer software program on or about April 1, 2009.

///

///

///

18.     As set forth above, Plaintiff registered the trademark "NOTABLE" on March 30, 2010. See Exhibit A. Plaintiff owns the registration, which is and continues to be in full force and effect. Plaintiff has used the trademark "NOTABLE" continuously since April 1, 2009 to identify its computer software, which among other things allows users to graphically interact with their touchpad/computers so as to comment and notate directly onto the user's screen and share those comments and notes with others. In this respect, Plaintiff uses its trademark in all aspects of its research, development, marketing, manufacture, distribution and sale of its computer software.

19.     Plaintiff has been marketing and selling its computer software to consumers and businesses since May 19, 2004. Plaintiff's computer software has been and continues to be extensively advertised and sold throughout the United States, including in the State of California, under the trademark "NOTABLE." In addition, Plaintiff's computer software has been covered extensively by the media, and reviewed by prominent technology media sites including TechCrunch, MacWorld, and PCWorld, which have a national presence, and has also been mentioned in The New York Times' "Venture Beat" Section. By virtue of Plaintiff's advertising, marketing and sales, together with consumer acceptance and recognition, Plaintiff's trademark identifies Plaintiff's computer software only, and distinguishes it from other computer and technology software manufactured and sold by others, including Defendant. Plaintiff's mark has thus become and is a valuable asset symbolizing Plaintiff, the high quality of its goods, and Plaintiff's goodwill throughout its marketplace.

20.     As set forth above, Plaintiff is informed and believes, and thereon alleges, that Defendant, with at least constructive notice of Plaintiff's ownership of the trademark "NOTABLE" has created, marketed, manufactured, distributed, and sold computer software and technology under the name "NOTABILITY" in a competing market with Plaintiff since at least March 30, 2010. Plaintiff is informed and believes, and thereon alleges that Defendant uses the name "NOTABILITY" in all facets of its business relating to its computer software product of the same name, including but not limited to in its marketing, its online presence, and in its manufacture, distribution, and sale of Notability.

21.     Defendant's name "NOTABILITY" is a colorable imitation of Plaintiff's registered trademark "NOTABLE". Defendant uses the name "NOTABILITY" in interstate commerce or in a manner substantially affecting interstate commerce in connection with the sale, offering for sale, distribution, and advertising of its technology software product which among other things allows users to graphically interact with their touchpad/computers so as to comment, draw, notate and sketch ideas directly onto the user's screen and share those comments, notes and drawings with others. As such, Defendant's use of the name "NOTABILITY" is likely to cause confusion, mistake, or deception among consumers as to the source, quality, and nature of Defendant's goods, As Plaintiff's product "NOTABLE" is virtually identical to Defendant's product "NOTABILITY".

22.     Defendant has failed and refused, and continues to fail and refuse, to comply with Plaintiff's prior request that Defendant cease and desist from using the confusingly similar mark "NOTABILITY" in connection with the sale and distribution of Defendant's computer/technology software, which is virtually identical to Plaintiff's computer/technology product "NOTABLE".

23.     As a proximate result of the advantage accruing to Defendant's business from Plaintiff's nationwide advertising, sales, and consumer recognition, and as a proximate result of confusion, deception, mistake or a combination thereof caused by Defendant's wrongful advertising and sale of its goods, as hereinabove alleged, bearing the name "NOTABILITY," Defendant has made substantial sales and/or profits in an amount to be determined at trial.

24.     As a proximate result of the advantage accruing to Defendant's business from Plaintiffs nationwide advertising, sales, and consumer recognition as a proximate result of confusion, deception, mistake or combination thereof caused by Defendant's wrongful advertising and sale of its goods, as alleged above, bearing the name "NOTABILITY" Plaintiff has been deprived of substantial sales of its goods in an amount to be determined at trial, and has been deprived of the value of its trademark as a commercial asset in an amount to be determined at trial.

///

25.     Defendant's continuing infringement is knowing, deliberate and willful. Defendant's infringement continues even after it received clear notice of its violation, and its claims in response to Plaintiff's notice are knowingly false.  Defendant cannot escape the consequences of its willful infringement by relying on the advice of counsel:

> Reliance on advice of counsel does not take an otherwise "exceptional" case out of that category unless there is evidence proving the reasonableness of that reliance.  While under certain circumstances a party's reasonable reliance on the advice of counsel "may defuse otherwise willful conduct," there must be proof of what counsel's advice was and that reliance on that advice was reasonable under the circumstances.  (citation)  Conversely, the failure to consult counsel prior to engaging in infringing conduct supports a finding of willful infringement and an award of attorneys' fees.  (citation)

*Id.* §30:98.

26.     Unless restrained by this Court, Defendant will continue to infringe Plaintiff registered trademark, thus engendering a multiplicity of judicial proceedings, and monetary compensation will not afford Plaintiff adequate relief for the damage to its trademark in the public perception.

## SECOND CAUSE OF ACTION

### (*Likelihood of Injury to Plaintiff's Business Reputation and/or Dilution of Distinctive Quality of Plaintiff's Mark -- Cal. Bus. Prof. Code §14330*)

27.     Plaintiff hereby incorporates paragraphs 1 through 23 of this Complaint as if set forth fully herein.

28.     Defendant's use, as alleged above, of the name "NOTABILITY" is likely to cause injury to the business reputation of and/or dilute the distinctive quality of Plaintiff's trademark. To wit, Defendant uses the name "NOTABILITY" in interstate commerce or in a manner substantially affecting interstate commerce in connection with the sale, offering for sale, distribution, and advertising of its technology software product which among other things allows users to graphically interact with their touchpad/computers so as to comment and notate directly onto the user's screen and share those comments, notes and drawings with others. In effect, Defendant uses the name "NOTABILITY" to market, distribute and sell computer/technology
///

1  software which is virtually identical to and the functional equivalent of Plaintiff's "NOTABLE"

2  computer/technology software.

3       29.    As a proximate result of Defendant's use of the name "NOTABILITY" Plaintiff

4  has suffered damages in an amount to be determined at trial.

5  **THIRD CAUSE OF ACTION**

6  (*Infringement of Mark to Enhance Commercial Value of Defendants Goods –*

7  *Cal. Bus. Prof. Code §14335(a)*)

8       30.    Plaintiff hereby incorporates paragraphs 1 through 26 of this Complaint as if set

9  forth fully herein.

10       31.    Defendant's use, as alleged above, of the name "NOTABILITY" was and is

11  without Plaintiff's prior consent.

12       32.    Defendant used the infringing name "NOTABILITY" to describe its

13  computer/technology software goods and services for the purpose of enhancing the commercial

14  value of, selling and soliciting purchases of its computer/technology software goods and

15  services, all at the expense of Plaintiff.

16       33.    As a proximate result of Defendant's conduct, Plaintiff has been damaged in an

17  amount to be determined at trial.

18  **FOURTH CAUSE OF ACTION**

19  [*For Violations of the California Unfair Business Practices Act*

20  *(Cal. Bus. Prof. Code 17200) Against Defendant*]

21       34.    Plaintiff hereby incorporates paragraphs 1 through 30 of the Complaint as if set

22  forth fully herein.

23       35.    As set forth above, Plaintiff owns the registered mark "NOTABLE". The Mark

24  was registered with the United States Patent and Trademark Office on July 22, 2009

25  (Registration Number 77787223).  See Exhibit A.  Plaintiff's trademark pertains to Plaintiff's

26  software application design tool, which is described herein.

27  ///

28  ///

36.     Although any cursory search by Defendant would have easily revealed the existence of the Mark, sometime after March 30, 2010, Defendant began marketing and selling a functionally equivalent computer software program using the identifying label "NOTABILITY." In this regard, and has set forth above, Defendant's conduct constitutes an unfair business practice under California Business and Professions Code 17200 *et seq*.

37.     As a direct, proximate, and foreseeable result of Defendant's wrongful conduct, as alleged above, Plaintiff has been faced with and suffered the dilution of its trademark and suffered damages as a result of Defendant's infringement thereof in an amount to be determined at trial. The Plaintiff is entitled to relief, including full restitution and disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by the Defendant as a result of such unfair business practice or practices.

38.     The Plaintiff has requested on numerous occasions that Defendant cease its unfair business practices, but Defendant has failed and refused to do so. The Defendant's acts hereinabove alleged are acts of unfair competition within the meaning of California Business and Professions Code § 17203. The Plaintiff is informed and believes that the Defendant will continue to do those acts unless the Court orders the Defendant to cease and desist.

39.     The Plaintiff has incurred and, during the pendency of this action, will incur expenses for attorneys' fees and costs herein. Such attorneys' fees and costs are necessary for the prosecution of this action, and such fees and costs will be proven at trial.

WHEREFORE, Plaintiff prays for relief as follows:

<u>**PRAYER**</u>

As to Plaintiff's First Cause of Action:

1.     For an order requiring Defendant to show cause why it should not be joined as hereinafter set forth, during the pendency of this action;

2.     For a temporary restraining order, a preliminary injunction, and a permanent injunction, all in joining Defendant and its agents, servants, and employees, and all persons acting under, in concert with, or for it from: (a) using or displaying the

///

name "NOTABILITY", or any reproduction, counterfeit, copy or colorblind

notation of Plaintiff's "NOTABLE" trademark, in connection with Defendant's

computer/technology software programs, (b) using or displaying the name

"NOTABILITY", or any reproduction, counterfeit, copy or colorblind notation of

Plaintiff's "NOTABLE" trademark, to describe Defendant's computer/technology

software programs for the purpose of enhancing the commercial value of, selling,

or soliciting purchases of its computer/technology services and software, (c)

otherwise diluting the distinctive quality of an infringing Plaintiff's trademark, (d)

causing likelihood of injury to Plaintiff's business reputation, (e) causing

likelihood of confusion, deception, or mistake as to the source or origin of

Plaintiff's goods and/or services.

3.    For an order requiring Defendant to deliver up and destroy all infringing materials

bearing the infringing designation "NOTABILITY."

4.    For three times the amount of Defendant's profits derived from Regiment of

Plaintiff's mark.

5.    For three times the amount of Plaintiff's actual damages suffered by reason of

Defendant's infringement of Plaintiff's mark.

6.    For attorney's fees and costs incurred.

7.    For such other and further relief as the Court may deem proper.

As to Plaintiff's Second Cause of Action:

1.    For an order requiring Defendant to show cause why it should not be joined as

hereinafter set forth, during the pendency of this action;

2.    For a temporary restraining order, a preliminary injunction, and a permanent

injunction, all in joining Defendant and its agents, servants, and employees, and

all persons acting under, in concert with, or for it from: (a) using or displaying the

name "NOTABILITY", or any reproduction, counterfeit, copy or colorblind

notation of Plaintiff's "NOTABLE" trademark, in connection with Defendant's

///

1    computer/technology software programs, (b) using or displaying the name

2    "NOTABILITY", or any reproduction, counterfeit, copy or colorblind notation of

3    Plaintiff's "NOTABLE" trademark, to describe Defendant's computer/technology

4    software programs for the purpose of enhancing the commercial value of, selling,

5    or soliciting purchases of its computer/technology services and software, (c)

6    otherwise diluting the distinctive quality of an infringing Plaintiff's trademark, (d)

7    causing likelihood of injury to Plaintiff's business reputation, (e) causing

8    likelihood of confusion, deception, or mistake as to the source or origin of

9    Plaintiff's goods and/or services.

10    3.    For damages according to proof at trial.

11    4.    For costs incurred in this suit.

12    5.    For such other and further relief as the Court may deem proper.

13    As to Plaintiff's Third Cause of Action:

14    1.    For an order requiring Defendant to show cause why it should not be joined as

15    hereinafter set forth, during the pendency of this action;

16    2.    For a temporary restraining order, a preliminary injunction, and a permanent

17    injunction, all in joining Defendant and its agents, servants, and employees, and

18    all persons acting under, in concert with, or for it from: (a) using or displaying the

19    name "NOTABILITY", or any reproduction, counterfeit, copy or colorblind

20    notation of Plaintiff's "NOTABLE" trademark, in connection with Defendant's

21    computer/technology software programs, (b) using or displaying the name

22    "NOTABILITY", or any reproduction, counterfeit, copy or colorblind notation of

23    Plaintiff's "NOTABLE" trademark, to describe Defendant's computer/technology

24    software programs for the purpose of enhancing the commercial value of, selling,

25    or soliciting purchases of its computer/technology services and software, (c)

26    otherwise diluting the distinctive quality of an infringing Plaintiff's trademark, (d)

27    causing likelihood of injury to Plaintiff's business reputation, (e) causing

28    ///

likelihood of confusion, deception, or mistake as to the source or origin of Plaintiff's goods and/or services.

3. For damages according to proof at the time of trial.

4. For costs incurred in this suit.

5. For such other and further relief as the Court may deem proper.

As to Plaintiff's Fourth Cause of Action:

1. For an order requiring Defendant to show cause why it should not be joined as hereinafter set forth, during the pendency of this action;

2. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all in joining Defendant and its agents, servants, and employees, and all persons acting under, in concert with, or for it from: (a) using or displaying the name "NOTABILITY", or any reproduction, counterfeit, copy or colorblind notation of Plaintiff's "NOTABLE" trademark, in connection with Defendant's computer/technology software programs, (b) using or displaying the name "NOTABILITY", or any reproduction, counterfeit, copy or colorblind notation of Plaintiff's "NOTABLE" trademark, to describe Defendant's computer/technology software programs for the purpose of enhancing the commercial value of, selling, or soliciting purchases of its computer/technology services and software, (c) otherwise diluting the distinctive quality of an infringing Plaintiff's trademark, (d) causing likelihood of injury to Plaintiff's business reputation, (e) causing likelihood of confusion, deception, or mistake as to the source or origin of Plaintiff's goods and/or services.

3. For restitution and disgorgement to the Plaintiff of all sums unlawfully collected by the Defendant as a result of its unlawful conduct is described herein.

4. For interest on such sums at the legal rate from the date of Defendant's unlawful conduct.

5. For attorney's fees incurred in connection with this suit.

6. For costs incurred in this suit.

7.      For such other and further relief as the Court may deem proper.

Dated: October 1, 2013          **SWEENEY, MASON, WILSON
                                & BOSOMWORTH**


                                By: /S/ Kurt E. Wilson, Esq.
                                    KURT E. WILSON, ESQ.,
                                    Attorneys for Plaintiff ZURB, INC.


### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury to the extent authorized by law.

Dated: October 1, 2013          **SWEENEY, MASON, WILSON
                                & BOSOMWORTH**


                                By: /S/ Kurt E. Wilson, Esq.
                                    KURT E. WILSON, ESQ.,
                                    Attorneys for Plaintiff ZURB, INC.